## 31359. YOUNG v. THE STATE.

INGRAM, Justice.

Appellant, Charlie Young, was convicted of murder, armed robbery and robbery by intimidation in the Greene County Superior Court following his indictment by a grand jury in that county. Appellant was sentenced to death for the murder conviction. He also received a sentence of life imprisonment for the armed robbery conviction and 20 years imprisonment for the robbery by intimidation conviction. Appellant's case is before this court on appeal and for mandatory review of the death sentence imposed in the trial court.

The state introduced evidence from which the jury was authorized to find the following facts: On December 15, 1975, Reuben H. Flynt, Vice-president of the Farmer's Bank in Union Point, Georgia, was killed. At approximately 12:30 p.m. that day, and approximately one hour later that day, a neighbor of Mr. Flynt's observed a green Buick pull into the victim's driveway and leave. A vehicle of similar description occupied by at least one black male was later observed near the Farmer's Bank.

Appellant later gave the following statement to police and FBI agents, after being apprised of his constitutional rights. At approximately 11 a.m., December 15, 1975, appellant and his nephew, Derwin Young, drove from Atlanta to Union Point, Georgia. Appellant was carrying a .22 caliber pistol in a paper bag in the car. Upon arriving in Union Point, appellant drove to the Farmer's Bank and then to Reuben Flynt's house, then back to the bank and to Reuben Flynt's house again before locating Mr. Flynt's car. Appellant then stopped at Mr. Flynt's house and went into the house while Derwin Young remained in the car. Appellant stated that his purpose in visiting Mr. Flynt was to discuss notices he had received from the bank concerning delinquencies in his payment of loans from the bank.

Appellant went to the door and rang the doorbell but was rebuffed by Flynt who told him to come see him at the bank in 30 minutes. Appellant stated that he then returned to the car, got the .22 caliber pistol, and walked inside the Flynt house where he asked to use the telephone to call his grandmother. After trying unsuccessfully to reach his grandmother, appellant Young again tried to talk with Flynt concerning the outstanding loans. Words were exchanged and an argument ensued. Young recalled that he struggled with Flynt, hit him at least once, and fired several times at close range. Then, appellant ripped the telephone from the wall, removed Flynt's billfold from his rear pocket, and hit him again several times with the gun and possibly another object. Appellant states that it was at this point that he got the idea of getting money from the bank. After being apprehended later, appellant stated that he thought he had killed Flynt.

Appellant and his nephew, Derwin Young, then drove to the bank. Appellant told Derwin Young to go into the bank and give Mr. Stewart (president of the Farmer's Bank) Flynt's wallet and get $60,000 from the bank. A teller at the Farmer's Bank testified that on December 15, 1975, a young black male entered the bank, handed her a billfold and said, "The man that gave me this billfold said for you to give me $60,000 or he will kill Reuben Flynt in 15 minutes." The bank president, Mr. Stewart, ordered that the money be released. Derwin Young was arrested by the Greensboro Chief of Police Carlton Lewis upon leaving the bank as the police were alerted while he was there. Derwin Young was identified at trial with the use of photographs taken of him from hidden cameras in the bank.

Appellant fled to his grandmother's house and was later arrested there. A .22 caliber pistol was discovered beneath the driver's seat of the car driven by him. Mr. Flynt was found dead at his home. He had suffered four gunshot wounds. The bullets removed from the victim were fired from the .22 caliber pistol found in the car driven by appellant. The victim also had two deep lacerations across his forehead, as well as lacerations on the left side of his chin and in the back of the scalp, which showed the victim had been hit several times with the butt of the gun. The victim apparently survived for some period after infliction of the wounds, but finally died from a loss of blood.

In his first enumeration of error, appellant contends that the trial court erred in refusing to grant a continuance for the presentation of appellant's challenge to the array of the grand and traverse juries. Appellant had filed the challenge to the array on January 19, 1976, in which he contended that the grand and traverse juries did not constitute a representative cross section of the community. Appellant was indicted on January 26, at which time counsel for appellant was given notice of a hearing on the motion scheduled for January 29. It was on this later date that appellant's motion to continue the hearing on the challenge to the array was denied by the trial judge.

Counsel for appellant presented no evidence in

support of the challenge to the array but did make an offer of proof as to what action he would have taken if he were given more time to prepare his presentation of the challenge. Appellant's co-counsel testified that various illnesses had kept him from work for a period of time and he contended this illness, plus the short notice of the hearing, justified a continuance. A motion for continuance is addressed to the sound discretion of the trial court and the refusal to grant a continuance will not be disturbed unless there is a clear abuse of discretion. We find none here. Code Ann. § 81-1419. See *Smith v. State,* 235 Ga. 620, 621 (221 SE2d 41) (1975); *Jackson v. Hopper,* 232 Ga. 419, 420 (207 SE2d 58) (1974); and *Campbell v. State,* 231 Ga. 69 (2) (200 SE2d 690) (1973).

In enumeration of error No. 2, appellant contends that the trial court erred in denying his motion for change of venue based on prejudicial pre-trial publicity. Under the law of this state, the test concerning prejudicial pre-trial publicity is whether the jurors summoned to try the case have formed fixed opinions as to the guilt or innocence of the defendant from their exposure to pre-trial publicity. The newspaper articles on which appellant relied to show prejudice were not inflammatory and appellant presented no evidence of fixed opinions on the part of the traverse jurors as to his guilt or innocence. See *Street v. State,* 237 Ga. 307 (227 SE2d 750) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); and *Krist v. Caldwell,* 230 Ga. 536 (198 SE2d 161) (1973). The grant or denial of motion for a change of venue in criminal cases lies largely within the discretion of the trial judge. The exercise of that discretion will not be reversed on appeal unless it is made to appear that there has been an abuse of that discretion. See *Street v. State,* supra; *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); and *Anderson v. State,* 222 Ga. 561 (150 SE2d 638) (1966). We find no abuse of discretion in this case. Code Ann. § 27-1101.

Applicable decisions of the United States Supreme Court on this issue were examined in detail in *Street v. State,* supra. We concluded in *Street* that under those decisions the defendant must show (1) that the setting of

the trial was inherently prejudicial, or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. We find no showing of this kind in the present case.

In enumeration of error No. 3, appellant argues that the trial court erred in denying his motion to declare the Georgia Capital Punishment Statute unconstitutional. This contention has been considered by this court and the Supreme Court of the United States and both have upheld the constitutionality of the Georgia statute. *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974); Gregg v. Georgia, — U. S. — (96 SC 2909, 49 LE2d 859) (1976).

Finally, appellant contends that the aggravating circumstances under Code Ann. § 27-2534.1 (b) (2) and (4) were not proved beyond a reasonable doubt. This enumeration of error will be considered in the sentence review. Code Ann. § 27-2537 (c) (2). We have reviewed the death sentence imposed in this case and conclude that it was not imposed under the influence of "passion, prejudice, or any other arbitrary factor." Code Ann. § 27-2537 (c) (1).

This court must also answer two additional questions before imposition of the death penalty can be affirmed: First, does the evidence support the jury's finding of statutory aggravating circumstances contained in § 27-2534.1 (b) (2), that is, was the offense of . . . murder . . . committed while the offender was engaged in the commission of another capital felony — and as provided in § 27-2534.1 (b) (4), did the offender commit the offense of murder for himself or another, for the purpose of securing money or any other thing of monetary value? A review of the evidence adduced by the state in this case shows that it is legally sufficient to support the finding by the jury of the presence of these aggravating circumstances.

The second question we must answer is whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. Code Ann. § 27-2537 (b) (3). We conclude that appellant Charles Young's death sentence for murder is neither excessive nor disproportionate to the penalty imposed in similar cases considering both the crime and the defendant. A list of similar cases is

appended to this opinion.

*Judgment affirmed. All the Justices concur, except Gunter, J., who dissents.*

ARGUED SEPTEMBER 13, 1976 — DECIDED NOVEMBER 2, 1976.

*Reuben A. Garland, Frank Joseph Petrella,* for appellant.

*Joseph Briley, District Attorney, Arthur K. Bolton, Attorney General, Kirby G. Atkinson, Assistant Attorney General,* for appellee.

APPENDIX.

Similar cases considered by the court: *Pass v. State,* 227 Ga. 730 (182 SE2d 779) (1971); *Howard v. State,* 231 Ga. 186 (200 SE2d 755) (1973); *Morgan v. State,* 231 Ga. 280 (201 SE2d 468) (1973); *Morgan v. State,* 233 Ga. 360 (211 SE2d 285) (1974); *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Stack v. State,* 234 Ga. 19 (214 SE2d 514) (1975); *Owens v. State,* 233 Ga. 869 (214 SE2d 173) (1975); *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Chenault v. State,* 234 Ga. 216 (215 SE2d 233) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976); *Mason v. State,* 236 Ga. 46 (222 SE2d 339) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Davis v. State,* 236 Ga. 804 (225 SE2d 241) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Stephens v. State,* 237 Ga. 259 (227 SE2d 261) (1976); *Isaacs v. State,* 237 Ga. 105 (226 SE2d 922) (1976); *Banks v. State,* 237 Ga. 325 (227 SE2d 380) (1976); *Dungee v. State,* 237 Ga. 218 (227 SE2d 746) (1976).