32260. STANLEY v. THE STATE.

HILL, Justice.

This is a death case. The defendant was convicted by a jury of felony murder (during commission of an armed robbery), armed robbery, and kidnapping with bodily injury. The jury found that each of these crimes was committed while the defendant was engaged in the commission of the other capital offenses, and that each was outrageously and wantonly vile, horrible and inhuman in that the offense involved depravity of mind of

the defendant and torture to the victim. The jury also found that the murder was committed by the defendant for himself for the purpose of receiving money and other things of value. For each of the three convictions the jury fixed punishment at death by electrocution.

Several weeks before the crime, two witnesses on separate occasions had heard discussions between the defendant and Joseph Thomas, who was indicted with the defendant. The two were discussing "hitting" an insurance agent who routinely followed a collection route through the small community in which the defendant lived. One of the witnesses overheard the defendant remark that after the robbery they would have to "get rid of him."

In a taped statement played to the jury the defendant said that on the day of the crimes he agreed with Thomas to "get" the insurance man for his money. The defendant stated that later that day, after the victim had made some collections in the area, and as the victim went behind a trailer, he (the defendant) pointed a gun at the victim. A witness saw the defendant pointing at the victim. The victim was forced to turn over his money, which the collection records indicated to be about $220. The defendant testified at trial that the three then went into some nearby woods and that on the way Thomas struck the victim on the arm with a hammer. After pleading for his life, the victim was hit on the head with the hammer and fell to the ground. The victim was then tied to a tree, and Thomas left the woods to move the victim's car. A witness testified to seeing Thomas drive away in the car and return on foot. Two witnesses saw him reenter the woods with a shovel. A witness saw the three move further into the woods and disappear from view. The defendant said in his taped statement that a shallow grave was dug and that he had the gun in his back pocket. The victim, still bound, was made to lie down in the grave.

The victim was pleading for his life when he was beaten and jabbed with a shovel in the head, throat and chest. The defendant said in his taped statement that Thomas then took the gun from the defendant and fired at the victim's head. Witnesses heard three shots. The defendant said that the victim was again beaten and

jabbed with the shovel. In his taped statement the defendant said that the victim knew what was happening as he lay in his grave and that he was pleading with them to stop. The victim was then buried alive. The distance from the trailer where the robbery took place to the grave was over 150 yards.

It appears from the evidence of the forensic autopsy that one bullet struck the victim, entered his upper right jaw through the lip directly below the right nostril and dislodged two teeth. The autopsy revealed severe bruises, scrapes and curved lacerations on the victim's head, face and neck. The breastbone was broken in two with associated internal hemorrhaging. There had been internal hemorrhaging about the lower right ribcage and the right collarbone. The autopsy evidence indicated that two lacerations of the head went to the skull bone which was fractured in these areas. The crushed bone had damaged the brain and caused internal hemorrhaging over the brain. The autopsy revealed that an event similar to a blow to the head with a hammer had crushed the skull in the temporal region above the left ear. The victim's windpipes and throat contained large amounts of dirt and blood so that smaller areas of both lungs were completely closed. A moderate amount of dirt and blood was found in the upper end of the stomach. The cause of death was found to be suffocation.

1. The defendant contends that the verdicts are contrary to the evidence and without evidence to support them, are decidedly and strongly against the weight of the evidence, and are contrary to law and the principles of justice and equity. In accord with *Ridley v. State,* 236 Ga. 147 (1) (223 SE2d 131) (1976) and *Ingram v. State,* 204 Ga. 164, 184 (48 SE2d 891) (1948), we find that the evidence was sufficient to authorize the jury to return the verdicts of guilty of felony murder and kidnapping with bodily injury. However, the conviction for armed robbery must be set aside as being contrary to law in that a person cannot legally be convicted and sentenced for both a felony murder and the lesser included felony on which that felony murder conviction is based, the armed robbery in this case. *Atkins v. Hopper,* 234 Ga. 330 (3) (216 SE2d 89) (1975). See also *Burke v. State,* 234 Ga. 512, 514, 518

(216 SE2d 812) (1975).

2. The defendant contends that the trial court erred in overruling his motion to suppress evidence of a statement he made on the third day after his arrest because it was made in a custodial interrogation without the benefit of counsel. A tape recording of the statement was allowed to be played to the jury and a transcript of the tape recording was allowed in evidence.

The beginning of the statement complained of contains a waiver of Fifth and Sixth Amendment rights. In this portion of the statement the sheriff read the Miranda rights to the defendant one at a time from a waiver form the defendant had previously signed and, after each right, the defendant answered that he understood that right. The sheriff then read affirmations from the form that his statement was voluntary, that it was not being induced by another, that it was made without his being promised the slightest hope of benefit, and that it was not induced by the remotest fear of injury. The defendant responded affirmatively to the sheriff. The sheriff read to the defendant from the form that the defendant had freely and voluntarily waived his right to counsel and that no threats or promises had induced the waiver. The defendant was asked if he had signed that statement form, and he replied, yes. He was then asked, "Are you willing to talk with us?" He responded, "Yes, sir."

Although the interrogation was custodial, it was not conducted in isolation. The evidence indicates the defendant's taped statement was made in the sheriff's office during the day. The tape contains noises from the police radio and from the telephone in the sheriff's office. There is evidence of short interruptions while other business was attended. The taped statement does not indicate that the defendant was compelled in any manner to be a witness against himself.

The defendant argues that Escobedo v. Illinois, 378 U. S. 478 (84 SC 1758, 12 LE2d 977) (1964), and Brewer v. Williams, 430 U. S. 387 (97 SC 1232, 51 LE2d 424) (1977), require that the statement should have been suppressed. In those cases, the defendant had been denied the benefit of previously obtained counsel. In the case at bar, the defendant had not obtained counsel nor had there been

any promise by authorities not to interrogate the defendant without the presence of his counsel. The ·defendant also urges that Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), requires that the statement be suppressed even though no counsel had been obtained. We have carefully scrutinized the efforts of the state to comply with the procedural safeguards required by Miranda and find no failure to meet the constitutional standards for the protection of the privilege against self-incrimination.

The defendant has attempted to show mental and literary weakness which would prevent an intelligent and knowing waiver of counsel. He introduced evidence that he had an IQ of 62, had a second grade reading ability, had experienced reading problems in the eighth grade and had difficulty writing coherently. The evidence also shows that the defendant was 20 years old, that he had completed the eleventh grade, that he wrote many letters from prison, and that he was able to communicate normally and respond intelligently to other persons. The trial court did not err in finding that the accused was offered counsel but intelligently and understandingly rejected the offer. Carnley v. Cochran, 369 U. S. 506 (82 SC 884, 8 LE2d 70) (1962); Hurt v. State, 239 Ga. 665 (238 SE2d 542) (1977); Miller v. State, 240 Ga. 110 (1977). The cases of Powell v. Alabama, 287 U. S. 45 (53 SC 55, 77 LE 158) (1932); Marshall v. Riley, 7 Ga. 367 (1849); and Smith v. State, 17 Ga. App. 693 (88 SE 42) (1915), are inapposite.

The trial court did not err in overruling a motion to suppress the statement made by the defendant during custodial interrogation.

3. The defendant contends that the trial court erred in overruling his motion to suppress the evidence of the taped statement on grounds that the prosecution did not establish the proper foundation for its admissibility, and because of errors in the tape.

The record contains ample evidence that the device used to make the tape was capable of recording an interrogation, the event which the evidence was tendered to portray. The persons operating the device were shown to be competent to do so. There was sufficient proof that

the recording was preserved without alteration. After hearing the tape recording, the defendant testified that he made the statement that was recorded on the tape. A proper foundation was made for admissibility of the taped statement. See *Harris v. State,* 237 Ga. 718 (5) (230 SE2d 1) (1976).

The defendant has not contended that the tape recording did not accurately portray his statement. His evidence indicates only that, in general, tape recording devices are not perfect recorders of sound events. However, there was ample evidence of reliability and accuracy so that the trial judge did not err in overruling the defendant's objections on these grounds.

4. The defendant contends that he was denied the assistance of counsel for his defense. The defendant was arrested on April 14, 1976, two days after the crimes occurred. He was initially indicted on May 4. Counsel was appointed on June 22. The initial arrangement was held two weeks later on July 6, 1976.. A challenge to the composition of the grand jury was sustained. The defendant was reindicted on November 29, 1976, following revision of the jury lists. His trial began January 13, 1977.

The defendant alleges that the court erred in not appointing an attorney upon his arrest, since his indigency should have been apparent, and because he was available for interrogation while in jail. We found in Division 2 that the constitutional standards applicable to custodial interrogation were fully met in this case. All of the evidence indicates that the defendant made no request for counsel to any authority and that he declined the offers of assistance of counsel that were presented to him. We find that custodial interrogation is not sufficient reason to compel the defendant to accept counsel that he has waived. Miranda v. Arizona, supra. See also Faretta v. California, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975).

The defendant asserts that *Fair v. Balkcom,* 216 Ga. 721 (119 SE2d 691) (1961), would require that counsel be appointed for him earlier than two weeks prior to his arraignment. *Fair v. Balkcom,* supra, was a murder case in which a suspect was arrested and indicted, pled guilty

and was sentenced to death without the assistance of counsel and within a period of less than 63 hours. Finding that justice unnecessarily hastened is to be condemned as much as justice unnecessarily delayed, this court vacated the conviction. The court held that Fair had not waived the assistance of counsel for his defense and that the Constitution of Georgia directs that the privilege and benefit of counsel be afforded Fair. Const. of 1976, Art. I, Sec. I, Par. XI (Code Ann. § 2-111). The court remarked that it was not called upon to decide just when the right to counsel commences, but indicated that counsel should be available after the indictment to assist the defendant with his arraignment. In the case now before us, counsel was appointed two weeks prior to the initial arraignment and afforded the defendant adequate assistance in his preparation for and plea of not guilty. *Fair v. Balkcom,* supra, is not applicable here. The defendant has not shown how, if at all, the delay in appointing counsel deprived him of the effective assistance of counsel. The defendant was not denied the assistance of counsel guaranteed by the Sixth Amendment.

5. The defendant contends that the court erred in admitting several pieces of physical evidence. A pair of gloves, one of which was found in the grave and the other near it, a pair of tennis shoes allegedly worn by the co-defendant Thomas, and the victim's bloody shirt are specifically complained about. From the transcript of the trial we find that when these items were offered in evidence the defendant had no objection. We also find that the exhibits complained of were evidence that the crimes charged in the indictment were committed and that their probative value justified whatever small effect of confusion or emotion these exhibits may have had on the jury. We cannot find that the trial court erred in admitting these exhibits. *Herrin v. State,* 230 Ga. 476 (1) (197 SE2d 734) (1973); *West v. State,* 232 Ga. 861 (1) (209 SE2d 195) (1974).

6. The defendant contends that the trial court granted the defendant's common law wife immunity from criminal prosecution in order to entice her to testify against the defendant and that the court improperly refused to allow her to be cross examined at the

commencement of her testimony concerning her willingness to testify against the defendant. We assume without deciding that a common law marriage was shown.

The witness was represented by counsel and had been granted immunity. The transcript reveals that after the witness testified for the state the defendant's counsel asked her, "You have elected to take the stand and testify against him [defendant], haven't you?" She replied, "Yes, sir." The defendant was not denied the right to cross examine his spouse as to the voluntariness of her testimony.

In *Young v. State,* 232 Ga. 285 (206 SE2d 439) (1974), this court found that the privilege accorded spouses by Code Ann. § 38-1604 belongs to the spouse testifying in a criminal proceeding, not to the defendant. Thus the defendant may not assert error when the defendant's spouse voluntarily testifies against him.

The grant to a witness of immunity from prosecution results in compulsory testimony notwithstanding the privilege against being required to testify against one's self. The grant of immunity does not operate to compel one spouse to testify against another. *State v. Smith,* 237 Ga. 647 (229 SE2d 433) (1976). The witness was not compelled by the grant of immunity to testify against her spouse. We find no violation of Code § 38-1604. The trial court instructed the jury that they should scrutinize with care the testimony of a witness granted immunity as an inducement to testify. The trial court did not err in allowing the witness to testify over the defendant's objections.

7. The defendant contends that the district attorney made improper remarks to the jury in his opening and closing statements in the first phase of the trial. In his opening statement the district attorney informed the jury that the state was seeking the death penalty. He told them the aggravating circumstances he intended to prove and asked the jury to note evidence which supported the aggravating circumstances. In his closing argument the district attorney asked the jury to put themselves in the place of the victim who must have felt pain and to think of the loss to the victim's family. We find no error in the

opening statement and no reversible error in the closing argument. Moreover, we find no objection to these comments made at trial. Therefore, the trial court was not called upon to consider whether the comments were error or to take any action. We therefore do not find that the trial court erred in allowing the comments of the district attorney. *Pulliam v. State,* 236 Ga. 460, 465 (224 SE2d 8) (1976). See *Hill v. State,* 237 Ga. 794 (5) (229 SE2d 737) (1976).

8. The defendant argues that the death penalty is unconstitutional. It was, however, upheld in Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976).

He argues that the death penalty for armed robbery has rarely been imposed in the past and cannot now be imposed under *Floyd v. State,* 333 Ga. 280, 285 (210 SE2d 810) (1974); *Gregg v. State,* 233 Ga. 117, 127 (210 SE2d 659) (1974); and *Jarrell v. State,* 234 Ga. 410, 424 (216 SE2d 258) (1975). The district attorney urges that the death penalty frequently has been imposed for armed robbery as evidenced by the number of cases in which we have set it aside. In the case before us, this issue is moot. See Division 1 of this opinion. See also Coker v. Georgia, 432 U. S. —- (53 LE2d 982) (1977).

9. Sentence Review. We must determine whether the sentences were imposed under the influence of passion, prejudice or any other arbitrary factor. Code Ann. § 27-2537 (c) (1).

The defendant contends that the comments of the district attorney in his opening statement and closing argument were inflammatory and unlawfully prejudicial. Although objections were not made at trial, we consider such matters in reviewing the death sentences, along with others which might appear. Code Ann. § 27-2537; *Ross v. State,* 233 Ga. 361, 367 (211 SE2d 356) (1974); *Prevatte v. State,* 233 Ga. 929, 931 (214 SE2d 365) (1975). However, the statements of the district attorney did not in our opinion cause the jury to impose the sentences under the influence of passion, prejudice or any other arbitrary factor. See *Jarrell v. State,* 234 Ga. 410, 426, supra. Using the standards prescribed for our review by the statute, we conclude that the sentences of death imposed in this case were not imposed under the influence of passion, prejudice

or any other arbitrary factor.

We must also determine whether the evidence supports the jury's finding of aggravating circumstance. Code Ann. § 27-2537 (c) (2). The jury found that the defendant committed felony murder while engaged in the commission of other capital felonies, armed robbery and kidnapping. with bodily injury, that the defendant committed the murder for himself for the purpose of receiving money and other things of value, and that the murder was outrageously and wantonly vile, horrible, and inhuman in that it involved depravity of mind of the defendant and torture to the victim. The jury found as aggravating circumstances supporting the death sentence for kidnapping that the kidnapping was committed while the defendant was engaged in the commission of other capital offenses, murder and armed robbery, and that the kidnapping was outrageously and wantonly vile, horrible, and inhuman in that the offense involved depravity of mind of the defendant and torture to the victim.

According to *Gregg v. State,* supra (233 Ga. at 127), where the aggravating circumstance authorizing the death penalty for one crime is a second crime, the first crime cannot then be used in aggravation of the second crime to support a second death penalty. However, according to *Pryor v. State,* 238 Ga. 698, 702 (234 SE2d 918) (1977), a lesser included offense may constitute an aggravating circumstance even though it may not be punished separately.

From the foregoing it can be seen that even eliminating the kidnapping from consideration as an aggravating circumstance supporting the death penalty for murder, the death penalties for both murder and kidnapping in this case are both independently valid under our law and are both amply supported by the evidence.

The death penalty for kidnapping with bodily injury is not unconstitutional where the victim is killed. See Coker v. Georgia, supra; *Collins v. State,* 239 Ga. 400 (236 SE2d 759) (1977).

We must also determine whether the sentence of death is excessive or disproportionate to the penalty

imposed in similar cases, considering both the crime and the defendant. Code Ann. § 27-2537(c) (3). In reviewing the death penalties in this case, we have considered the cases appealed to this court since January 1, 1970, in which death or life sentences were imposed and we find the similar cases listed in the appendix support the affirmance of the death penalties in this case. Since kidnapping with bodily harm was made a capital offense by adoption of the 1968 Criminal Code (Ga. L. 1968, pp. 1249, 1282), juries have imposed the death penalty for that crime in those similar cases listed in the appendix under the heading "kidnapping cases." The cases used in the comparison were cases where the defendant exhibited a complete disregard for human life.

Although Ivon Stanley had no prior criminal record, there was evidence showing that he was an active participant in the crimes: enticing the victim to the place of the robbery, handling the pistol, guarding the victim while Thomas moved the car, digging the victim's grave, and burying the victim while he was still alive and pleading for his life. Although the sheer savagery of Ivon Stanley's conduct may have been equalled by others, it has seldom if ever been exceeded. Ivon Stanley's sentences to death are not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*The judgments convicting the defendant of murder and kidnapping with bodily injury and imposing the sentences of death for each are affirmed. The judgment convicting the defendant of armed robbery is reversed. All the Justices concur.*

ARGUED JUNE 15, 1977 — DECIDED NOVEMBER 28, 1977 — REHEARING DENIED DECEMBER 15, 1977.

*George W. Stacy, Gwendolyn Adams,* for appellant.

*A. Wallace Cato, District Attorney, Arthur K. Bolton, Attorney General, Daryl A. Robinson, Staff Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976); *Young v. State,* 237 Ga. 852 (230 SE2d 287) (1976); *Dix v. State,* 238 Ga. 209 (232 SE2d 47) (1976); *Blake v. State,* 239 Ga. 292 (236 SE2d 637) (1977); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977).

KIDNAPPING CASES.

*Henderson v. State,* 227 Ga. 68 (179 SE2d 76) (1970); *Akins v. State,* 231 Ga. 411 (202 SE2d 62) (1973); *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12) (1974)*; *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Peek v. State,* 239 Ga. 422 (1977).

---

* Although the death penalty in *Eberheart v. State,* supra, was set aside because no death was involved (Eberheart v. Georgia, — U. S. —), it is a case in which the jury imposed the death penalty for kidnapping with bodily injury.