### 34020. REDD v. THE STATE.

BOWLES, Justice.

The appellant, Bob Redd, was indicted by a Richmond County grand jury for the January 26, 1976 kidnapping and murder of Paul D. Eskew, Sr. He was tried by a jury and found guilty of both offenses. In sentencing Redd to death, the jury found the statutory aggravating circumstance that the murder was committed while the offender was engaged in the commission of another capital felony. Code Ann. § 27-2534.1 (b) (2). Appellant was also sentenced to life imprisonment for the kidnapping.

In *Redd v. State,* 240 Ga. 753 (243 SE2d 16) (1978),

appellant's convictions and life sentence for kidnapping were affirmed; however, because a violation of *Hawes v. State,* 240 Ga. 327 (240 SE2d 833)(1977), and *Fleming v. State,* 240 Ga. 142 (240 SE2d 37)(1977), was found to exist, appellant's sentence of death for the offense of murder was reversed and a new trial ordered on the issue of punishment for that offense.

Upon resentencing, the jury again found that the murder was committed while in the course of kidnapping with bodily harm to the victim and, in addition thereto, found that the murder was outrageously and wantonly vile, horrible and inhumane in that the offense involved depravity of mind of the defendant and torture of the victim. Code Ann. § 27-2534.1 (b) (7). Based on these two aggravating circumstances the appellant was again found by the jury subject to death by electrocution.

This case is here on direct appeal and for mandatory review of the death sentence imposed. The facts surrounding the kidnapping and murder of Paul D. Eskew, Sr. are adequately set forth in *Redd v. State,* supra, and will be repeated here only as necessary in addressing appellant's enumerations of error.

1. In his first enumeration of error appellant contends that the trial court erred in questioning the jury panel concerning their opposition to capital punishment. Appellant argues that since the guilt phase of trial was concluded, and the only purpose of the new trial was for resentencing, the jury need no longer be qualified under Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968).

In Witherspoon v. Illinois, supra, the Supreme Court of the United States made clear that, "[A] sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Witherspoon, supra, at 522. Such a venireman cannot be excluded for cause unless he makes it unmistakably clear that (1) his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's *guilt,* or that (2) he would automatically vote against the

*imposition of the death penalty* in the case regardless of the evidence that might be developed at trial.

In a death case, qualifying the jury protects against bias during both phases of the bifurcated trial. First, it assures *during the guilt phase of trial* that jurors who are unable to render an impartial verdict because of their opposition to capital punishment are excluded. Second, *during the sentencing phase of trial,* it assures that those jurors who although able to render an impartial verdict as to a defendant's guilt are excluded because their opposition to capital punishment makes it impossible for them to consider the death penalty as punishment in the case, regardless of the evidence.

Appellant's contention that the trial court erred in qualifying the jury is, therefore, without merit.

2. In enumeration of error two, appellant contends that a prospective juror was improperly excused because of his beliefs concerning capital punishment.

During the voir dire examination the trial court asked all prospective jurors the following question: "Are you conscientiously opposed to capital punishment? If so, please raise your hand." Juror Phillips raised his hand and was then asked: "Would your reservations about capital punishment prevent you from making an impartial decision on the issue of punishment . . . for defendant's conviction of murder according to the evidence and the instructions of the court?" Juror Phillips responded: "I believe it would, sir." The trial court then asked this juror: "Are your reservations about capital punishment such that you could never vote to impose the death penalty regardless of the evidence and the instructions of the court?" Juror Phillips again responded, "Yes." The juror was then asked, "Are your reservations about capital punishment such that you would refuse even to consider its imposition in the case before you, regardless of the evidence and instructions of the court?" Juror Phillips responded, "Yes, sir, I would be completely against it." Finally, Juror Phillips was asked, "Are you irrevocably committed before the trial has even begun on the issue of punishment for the conviction of murder to vote against the penalty of death regardless of the evidence, facts, and circumstances that emerge in the course of the pro-

ceedings and instructions of the court?", and in response he answered, "I couldn't vote for capital punishment."

It is clear that this juror's responses satisfy the test set forth in Witherspoon v. Illinois, supra, and Davis v. Georgia, 429 U. S. 122 (97 SC 399, 50 LE2d 339)(1977), and, therefore, the trial court did not err in excusing this juror for cause.

3. Enumeration of error three complains of the trial court's refusal to allow in evidence, for the purpose of impeachment, a written report containing an alleged inconsistent statement made by a state's witness.

John Morris, the state's chief witness, testified at trial that he was with Redd when they both followed the victim, Paul Eskew, Sr., from a bar, blocked his attempted exit in his automobile, dragged him to Redd's automobile and drove him to the woods where Redd took the victim's wallet and killed him by beating him with a tire tool and hammer, and slashing his throat twice. On cross examination, Morris admitted that he had talked with investigator James Johnson on March 5, 1976, but denied that he had told him that he had taken the victim's wallet and placed it on the dashboard of appellant's car.

The defense, in presenting its case, called investigator Johnson for the purpose of introducing a statement made by Morris while under the influence of sodium pentothal for the purpose of showing that while drugged Morris had stated that he, not Redd, had removed the victim's wallet and placed it on the dashboard of appellant's car.[1] Over the state's objection, the trial court ruled that appellant could present such testimony for the jury to give such weight and consideration as it saw fit. When questioning resumed, appellant sought to have investigator Johnson recite from a report of the interrogation written by Johnson and his partner. Upon objection by the state, the trial court ruled that it would not allow the witness to read from the report. The witness

---

[1]For the purpose of this decision we do not consider whether testimony elicited while under the influence of sodium pentothal is or is not admissible in evidence.

was, however, allowed to read the report in order to refresh his memory and, after doing so, was asked what John Morris had told him during the interrogation. The witness replied, "I do not recall exactly what John Morris said that day." Appellant then attempted to offer the written report in evidence in order to impeach the testimony of John Morris, but the trial court refused to allow appellant to do so over the state's objection.

"A written document previously made and signed by a witness, which is contrary to his testimony, may be introduced in evidence for the purpose of impeachment on the ground of contradictory statements. . ." *Manley v. Combs,* 197 Ga. 768 (2) (30 SE2d 485) (1944). Code Ann. § 38-1803. See also: *Washington v. State,* 124 Ga. 423 (7) (52 SE 910) (1905).

The written report sought to be introduced in the instant case was not previously made by nor signed by John Morris, the witness that appellant sought to impeach and, therefore, the trial court properly excluded its introduction in evidence for the purpose of impeaching this witness' prior testimony.

4. In enumeration of error four the appellant contends that the trial court erred in failing to grant appellant's motion for mistrial after the district attorney, in his closing argument to the jury, stated, ". . . and having heard what you've heard in this resentencing trial, you've got to decide—whether you're going to fairly and adequately and appropriately punish this defendant, Bob Redd, or whether you're going to give him another chance."

Appellant objected to the district attorney's remarks for the reason that they allegedly violated Code Ann. § 27-2206, which prohibits any attorney in a criminal case from arguing that, by reason of parole, the defendant may not be required to suffer the full penalty imposed by the jury. The district attorney, however, argued that giving the defendant a life sentence, was giving him "another chance to do harm to fellow human beings regardless of where." Although the trial judge overruled appellant's motion for mistrial, he did instruct the district attorney to confine himself to the evidence and reasonable deductions to be drawn therefrom.

The district attorney's remarks made no reference to parole of any nature. As we read these remarks the district attorney was simply attempting to convince the jury that the only appropriate punishment in the case was a sentence of death since, if a life sentence were imposed, the defendant would have "another chance" to do harm, even if in prison. Such argument is not improper. *Tamplin v. State,* 235 Ga. 20 (4) (218 SE2d 779) (1975); *Mason v. State,* 236 Ga. 46 (222 SE2d 339) (1976).

The trial judge did not err in refusing to grant appellant's motion for mistrial.

5. In his fifth enumeration of error appellant contends that the trial court erred in failing to give his written request to charge the jury that should they find ". . . that there was another involved in the commission of this crime and that charges have been dismissed against such person, this would be a mitigating circumstance which you should consider in your deliberations."

Although appellant's request to charge was not given, the trial court did charge the jury that they "should consider all of the evidence and all of the facts and circumstances of the case, including any mitigating circumstances. . ." The court further charged that "mitigating circumstances are those circumstances which do not constitute justification or excuse for the crime, such as low intelligence or intoxication, but which may be considered as extenuating or reducing the moral culpability or blame."

In *Thomas v. State,* 240 Ga. 393, 401 (242 SE2d 1) (1977), this court held that mitigating circumstances were not required to be singled out in the charge. See also, *Potts v. State,* 241 Ga. 67 (243 SE2d 510) (1978); *Spivey v. State,* 241 Ga. 477, 479 (246 SE2d 288) (1978). "The reason behind that ruling was that Georgia law nowhere defines mitigating circumstances. 'Mitigating circumstances' are referred to in Code Ann. § 27-2534.1 (b) and § 27-2503, but the statutes are wholly silent on what they shall be . . . The conclusion is inescapable that the legislature meant to empower the jury to consider as mitigating anything they found to be mitigating, without limitation or definition. This is a constitutionally valid procedure." *Spivey,* supra.

Appellant contends, notwithstanding our holdings in *Thomas, Potts,* and *Spivey,* that the recent United States Supreme Court decision in Lockett v. Ohio, — U. S. — (98 SC 2954, 57 LE2d 973) (1978), requires *"individualized* consideration of mitigating circumstances in capital cases." (Emphasis supplied.)

In Lockett, supra, the Supreme Court found unconstitutional Ohio's statutory scheme whereby once a defendant was found guilty of aggravated murder with at least one of seven specified aggravating circumstances, the death penalty was mandatory unless one of three mitigating circumstances, specified by statute, was found. The court held that, "The limited range of mitigating circumstances which may be considered by the sentencer under the Ohio statute is incompatible with the Eighth and Fourteenth Amendments. To meet constitutional requirements, a death penalty statute must not preclude consideration of relevant mitigating factors." Lockett, supra, 55 LE2d 992.

Though the opinion makes reference to "individualized consideration of mitigating factors" such reference does not imply that individual consideration be given to each potential mitigating circumstance, but rather, that individual consideration be given each defendant by not limiting mitigating factors that may be considered by the jury.

As stated in the majority opinion, the sentencer must ". . . not be precluded from considering as a mitigating factor *any* aspect of a defendant's character or record and *any* of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death . . . An *individualized* decision is essential in capital cases. The need for treating each defendant in a capital case with that degree of respect due to the uniqueness of the individual is far more important than in noncapital cases." Lockett, supra, 55 LE2d 990. (Emphasis supplied.)

We adhere to what was previously stated in *Thomas, Potts* and *Spivey* that mitigating circumstances need not be singled out in the court's charge to the jury.

In the instant case, the trial court instructed the jury in sweeping language to consider all of the facts and

circumstances of the case, including any mitigating circumstances. The court went on to define for the jury what constituted mitigating circumstances. The trial court gave the jury a fair and adequate charge on mitigating circumstances, and did not err in refusing to charge in the language appellant requested. *Reynolds v. State,* 231 Ga. 582 (203 SE2d 214) (1974); *Herrmann v. State,* 235 Ga. 400, 401 (220 SE2d 2) (1975).

6. In his final enumeration of error appellant contends that the trial court erred in allowing the jury upon resentencing to consider statutory aggravating circumstances which were charged at appellant's previous trial but not designated by that jury as aggravating circumstances in support of the imposition of the first death penalty.

At appellant's first trial the jury was authorized to consider the following statutory aggravating circumstances: (1) The offense of murder was committed while the defendant was engaged in the commission of another capital felony; to wit, kidnapping with bodily injury (Code Ann. § 27-2534.1 (b) (2)). (2) The offense of murder was outrageously or wantonly vile or inhumane in that it involved torture, or depravity of mind, or an aggravated battery (Code Ann. § 27-2534.1 (b) (7)). (3) The offense of murder was committed while the offender was engaged in the commission of another capital felony; to wit, armed robbery (Code Ann. § 27-2534.1(b)(2)). In recommending the sentence of death, the jury listed only one of the three aggravating circumstances that were charged by the trial judge—the offense of murder was committed while defendant was engaged in the commission of another capital felony, kidnapping with bodily injury.

Upon resentencing, the trial court charged that the jury was authorized to consider the same three statutory aggravating circumstances as listed above.[2] The jury recommended sentencing appellant to death but this time

---

[2]The jury was also authorized to consider upon resentencing the additional statutory aggravating circumstance, that the offense of murder was committed for the purpose of receiving money. Code Ann. §

listed in support thereof two statutory aggravating circumstances; one which the jury found to exist at the first trial of the case—the offense of murder was committed while defendant was engaged in the commission of another capital felony, kidnapping with bodily injury; the other being one that was previously charged at the first trial but not listed by the jury in support of the death sentence imposed in that case — the offense of murder was outrageously or wantonly vile, horrible or inhumane in that it involved torture, depravity of mind or an aggravated battery.

Appellant argues that by allowing the second jury, upon resentencing, to consider those statutory aggravating circumstances charged but not listed by the first jury in support of the death sentence, he is placed in double jeopardy since a finding of only one statutory aggravating circumstance by the first jury was an acquittal as to the other statutory aggravating circumstances that had been charged by the trial court but not listed by the jury in support of the first death sentence.

Recently, in *Ward v. State,* 239 Ga. 205, 208 (236 SE2d 365) (1977), this court held that in a capital case, if a defendant is sentenced to life on the first trial and later retried, a death sentence cannot be imposed at the conclusion of the second trial. This court found it impossible to say that the death penalty was not disproportionate where on the previous trial of the same case the jury imposed life imprisonment. Thus, *Ward,* supra, avoided the double jeopardy issue and based its decision on those factors to be considered in our review of the death sentence. Code Ann. § 27-2537 (c) (3).

In the present case we do not have the issue as raised in *Ward,* supra. At appellant's first trial the jury sentenced him to death, and thus, upon retrial, the second jury was authorized to consider the death penalty as an

---

27-2534.1 (b) (4). The appellant does not contend that it was error for the trial court to charge this statutory aggravating circumstance since it was not previously considered by the first jury.

appropriate punishment in the case.

The double jeopardy clauses of the Federal and State Constitutions basically provide that no person shall be placed in jeopardy of life or liberty more than once *for the same offense.* Code § 1-805; Code Ann. § 2-115.

The United States Supreme Court, in United States v. Ball, 163 U. S. 662, 669 (1896), observed that, "The Constitution of the United States, in the Fifth Amendment, declares, 'nor shall any person be subject [for the same *offense*] to be twice put in jeopardy of life or limb.' The prohibition is not against being twice *punished,* but against being twice *put* in jeopardy . . ." (Emphasis supplied). Referring to this case, in Price v. Georgia, 398 U. S. 323, 326 (1970), the Supreme Court recognized that, "The 'twice put in jeopardy' language of the Constitution thus related to a potential, i. e., the risk that an accused for the second time will be *convicted* of the *'same offense'* for which he was initially tried." (Emphasis supplied.) Price, supra, goes on to state that, ". . . the double jeopardy clause of the Fifth Amendment is written in terms of potential risk of trial and *conviction,* not *punishment."* Id. at 329. (Emphasis supplied.)

In the instant case the jury, at the first trial, found appellant guilty of the offense of murder. On appeal, appellant's *conviction* for murder was affirmed; however, the sentence for that offense reversed and a new trial ordered as to *punishment.* The appellant was not twice put in jeopardy of being *convicted* for the same *offense* since his conviction for murder was affirmed on appeal. Appellant's punishment was the only thing which remained to be decided by the jury upon his retrial. Further, the statutory aggravating circumstances as charged to the jury and as set forth in Code Ann. § 27-2534.1 (b) (1-10) are not *offenses* within the meaning of the double jeopardy clause but are charged a jury in order to guide them in their determination of whether a defendant should be given a life or death sentence.

For these reasons, appellant's enumeration of error is without merit.

7. Sentence Review. Our sentence review has included consideration of the aggravating circumstances found by the jury and the evidence introduced in court

concerning the crime and the defendant. We have reviewed the sentence as required by Ga. L. 1973, p. 159 (Code Ann. § 27-2537 (c) (1-3)), as we have in each case involving a death penalty that we have reviewed under this statute. We conclude that the sentence of death imposed on Bob Redd was not imposed under the influence of passion, prejudice or any other arbitrary factor. Code Ann. § 27-2537 (c) (1).

The jury found as statutory aggravating circumstances that:

(1) the offense of murder was committed while the defendant was engaged in the commission of another capital felony, kidnapping with bodily injury (Code Ann. § 27-2534.1 (b) (2)) and,

(2) the offense of murder was outrageously or wantonly vile, horrible or inhumane in that it involved torture, depravity of mind, or aggravated battery to the victim (Code Ann. § 27-2534.1 (b) (7)). The evidence supports the jury's findings in regard to the statutory aggravating circumstances. Further, we have thoroughly reviewed the instructions of the trial court during the sentencing phase of appellant's trial and find that the charge as given was not subject to the defects dealt with in our decisions in *Fleming v. State,* supra, and *Hawes v. State,* supra.

Bob Redd has been determined to be of borderline intelligence with a passive aggressive personality bordering on being schizoid with much underlying hostility. Prior to the current episode, his criminal activity extending over a period of fifteen years has been reflected in conviction four times for theft.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed for murder and we find that those similar cases set forth in the appendix support affirmance of the death penalty. Bob Redd's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant. Code Ann. § 27-2537 (c) (3). The verdict is factually supported.

*Judgment affirmed. All the Justices concur, except Hall, J., who concurs specially as to Division 6, and Hill,*

*J., who concurs in the judgment only.*

ARGUED SEPTEMBER 19, 1978 — DECIDED JANUARY 4, 1979 — REHEARING DENIED JANUARY 23, 1979.

*Pierce & House, Stanley C. House,* for appellant.

*Richard E. Allen, District Attorney, Arthur K. Bolton, Attorney General, Daryl Robinson, Assistant Attorney General,* for appellee.

## APPENDIX.

*Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Young v. State,* 237 Ga. 852 (230 SE2d 287) (1976); *Douthit v. State,* 239 Ga. 81 (235 SE2d 493) (1977); *Corn v. State,* 240 Ga. (240 SE2d 694) (1977); *Thomas v. State,* 240 Ga. 393 (242 SE2d 1) (1977); *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977); *Campbell v. State,* 240 Ga. 352 (240 SE2d 828) (1977); *Alderman v. State,* 241 Ga. 496 (246 SE2d 642) (1978).

HALL, Justice, concurring specially as to Division 6.

I cannot agree with the ratio decidendi in Division 6 of the majority opinion on the application of statutory aggravating circumstances in a death case.

The beginning point for me is the statute itself. That statute sets forth ten aggravating circumstances and then provides that the ". . . statutory instructions [aggravating circumstances] as determined by the trial judge to be warranted by the evidence shall be given in charge and in writing to the jury for its deliberation. The jury, if its verdict be a recommendation of death, shall designate in writing, signed by the foreman of the jury, the aggravating circumstance or circumstances which it found beyond a reasonable doubt." Code Ann. § 27-2534.1.

(Emphasis supplied.) The question is whether this statute means that where a jury finds against the accused on only one of the circumstances this amounts to a finding that the evidence did not authorize a verdict of guilty beyond a reasonable doubt on the other charged aggravating circumstances, or whether it means that the jury just stopped their deliberations after finding one aggravating circumstance. The majority opinion appears to make the latter construction; common sense leads me to the former.

We must remember that the General Assembly of Georgia has set a very strict standard on double jeopardy under its Criminal Code by preventing a second prosecution where "there was a finding that the evidence did not authorize the verdict." Code Ann. § 26-507 (d). The policy behind this provision is to prevent harassment of the accused by successive prosecutions. *Marchman v. State,* 234 Ga. 40 (215 SE2d 467) (1975); *State v. Estevez,* 232 Ga. 316 (206 SE2d 475) (1974). Would not this policy be even stronger where the subsequent prosecution seeks death rather than imprisonment? As I read this court's opinions in *Ward v. State,* 239 Ga. 205 (236 SE2d 365) (1977) and *Miller v. State,* 237 Ga. 557 (229 SE2d 376) (1976), the state has one opportunity to find a defendant guilty of an aggravating circumstance which authorizes the death penalty. The rationale is that the failure of a jury to find on an aggravating circumstance which was put in issue in the judge's charge is an implicit acquittal for that particular aggravating circumstance.

In my opinion, the trial court erred in submitting to the jury the two aggravating circumstances upon which the jury in the first trial had made an implicit acquittal. The next question is whether or not the error was harmless because the second jury also found the defendant guilty of a third aggravating circumstance—the same one for which the first jury found him guilty. I believe that the error in this case was harmless.

In Price v. Georgia, 398 U. S. 323 (2) (1970), the defendant was charged with murder in his first trial and was convicted of voluntary manslaughter. After a successful appeal, the case was retried. The defendant was again charged with first degree murder and was

again convicted of voluntary manslaughter. The Supreme Court of the United States held that the voluntary manslaughter conviction could not stand because again submitting the issue of murder to the jury impermissibly infected the second trial. Chief Justice Burger, in reaching the conclusion that the error was harmful stated, "[W]e cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence." Id. at 331.

Price v. Georgia is, of course, a federal constitutional case, and I have been concerned merely with Georgia's statutory requirements. By analogy, however, Price v. Georgia points to the conclusion that only harmless error occurred in this case.

In Price, the second jury faced three alternatives: guilty of murder, guilty of voluntary manslaughter, or not guilty. If the jury were divided, guilty of voluntary manslaughter might represent a compromise verdict. The impermissible charge on murder, therefore, created an option for the jury which prejudiced its deliberations. On the other hand, Redd's jury in the sentencing phase faced two options: death or life imprisonment. No possible compromise existed which would produce a different sentencing result. The reasoning of Price v. Georgia is, therefore, inapplicable.

I concur in the judgment.

HILL, Justice, concurring in judgment only.

Regarding the use of previously omitted aggravating circumstances (footnote 2 to the majority opinion), see my concurring opinion in *Davis v. State,* 242 Ga. 901, 909, post. (1979).