21869.   SOLOMON *v.* THE STATE.

756

*F. L. Clements, R. Douglas Feagin,* for plaintiff in error.
*Charles H. Garrett, solicitor-general,* contra.

Luke, J. Robert Solomon was convicted of burglary. His motion for a new trial contains the general and certain special grounds. It is undisputed that a burglary was committed, and the validity of the conviction depends upon whether or not the defendant was found in the recent possession of one or more of four automobile tires alleged to have been taken from the storehouse of Adams-Buchanan Motor Company.

Lizzie Whitehead testified in part as follows: "I saw the defendant that morning. I am sure he is the man I saw. . . I saw him that morning about 6:20 right there in the door. . . He had the tires in the big side door of the Adams-Buchanan Motor Company. He had those tires there and some tubes and one battery. He went right on to Broadway. . . I says to Fanny, "Come on; you get two of the tires, and I will get two: and we got them and put them in my hall. Fanny is my niece. . . Directly the defendant came back . . and he came up in his car and got out, and he put the battery in the car, and he says: 'Who moved those tires?' . . I put down the number of his tag on a piece of paper. . . The number . . was 200138V. The defendant was driving a closed car. . . I didn't see him when he first came there. When I saw him he was leaving the door, and leaving the tires and battery there about 6:30 on Saturday in last September. . . He was right at the door, and the other girl saw him with them in his hands. . . I am not guessing it was him. When I put my eyes on anybody I know them when I see them again."

Fanny Lowe testified: "I was there that Saturday morning when Robert Solomon was out there with tires. . . Robert was standing up there in the door, and he had two tires in his hand, and he was laying them down. And he left . . and came back with the car. And he got the battery and put it in his car, and while he was gone . . Lizzie and myself got the tires. And when the

defendant put the battery in his car he said: 'Who moved those tires?' And he commenced to raise sand, and says: 'Mr. Jones put them out there for me, and I will go and get him and let him get them for me.' There were already two tires there at the door when I saw the defendant put two more down there, and also a battery. . . When Mr. Adams come in he identified them as his.''

E. M. Adams, one of the partners in the business known as Adams-Buchanan Motor Company, testified in part as follows: "These are the tires that I got from Lizzie Whitehead. We had a customer's car there we had worked on the afternoon before, and a spare found at Lizzie's had the same kind of mud on it as the wheels attached to the customer's car. . . The other three I can not identify myself." On cross-examination, this same witness testified: "I can positively identify those tires as being ours. . . I can identify that tire there as the one that came off of the customer's car."

T. O. Baldwin, a mechanic for Adams-Buchanan Motor Company, testified: "I remember the morning the company recovered some tires from Lizzie Whitehead. I saw them that morning. Those there are the same tires. I identify them as coming out of our place. I put two of them on a car the day before in the place, and they were off the next morning. The two Murray tires are the ones I put on. That Goodyear tire came off of a customer's car. . . Lizzie Whitehead had three tubes, four tires and a wheel. . . I positively recognize those three tires, for I handled two of them the afternoon before, and one of them came off our customer's car. I am sure those tires came out of our place. . ."

C. F. Griffin, assistant foreman, testified: "I don't know whether those are Mr. Adams' tires or not, except the ones that come off of Mr. Molan's car, and I know it by the dirt that matched up with the rest of his tires; and I noticed that tire being off the car when I walked in the shop."

The defendant pleaded an alibi, and adduced evidence tending to sustain that defense. He also made a statement to the jury averring that he knew nothing about said tires, and that he was not the man that Lizzie Whitehead and Fanny Lowe claimed to have seen on the morning in question.

We can not say that the verdict is not supported by the evi-

dence; and hold that the court did not err in overruling the general grounds of the motion for a new trial.

■ Special ground 1 complains of the following charge: "The defendant pleads not guilty, and that makes the issue whether he is guilty or not. . . The presumption of law is that he is innocent, and you ought not to convict him unless the evidence shows him to be guilty beyond a reasonable doubt. This is the burden placed upon the State, . . that he be proven to be guilty beyond all reasonable doubt, and it is the duty of the jury to give the prisoner the benefit of every reasonable doubt arising in the consideration of the case." It is insisted that "said charge failed to state to the jury that this defendant entered upon his trial with the presumption of innocence in his favor, and that this presumption remains with him throughout the trial, until such time when said presumption is overcome by sufficient proof to satisfy the minds of the jurors that the defendant is guilty." The court's charge was eminently fair to the defendant, and there was no request for any other or further instructions in the premises. We hold that the ground discloses no error.

3. Special ground 2 avers that "said charge failed to instruct the jury the meaning of reasonable doubt, . . failed to explain in any manner what reasonable doubt was, and . . instructed the jury concerning civil cases. . ." The charge referred to is this: "A reasonable doubt is a doubt that is reasonable, because the rule is that guilt must be shown to a reasonable and moral certainty. In other words, it wouldn't do to say they are probably guilty, that the defendant is probably guilty. You ought not to convict on a probability. In a civil suit that is all right, . . but when it comes to a prosecution in a criminal case the rule is that the burden is on the State, and the State must show guilt beyond all reasonable doubt." It appears to be doubtful if "reasonable doubt" can be made clearer by definition. We quote from *Batlle* v. *State,* 103 *Ga.* 53 (2), 58. "It would seem, therefore, to be a conclusion that the phase 'reasonable doubt' explains itself. Certainly the meaning is obvious, and will be readily appreciated by the average juror without further explanation." The charge was favorable to the accused, and for no reason assigned was it reversible error to give it to the jury.

The charge upon the law applicable to the defendant's statement

contains the substance of section 1036 of the Penal Code (1910), and there was no request for any other or further charge upon that subject; and for no reason assigned does special ground 3 disclose reversible error.

■ It appears from special ground 4 that after correctly explaining to the jury the meaning of an "alibi," the court charged that it was "a perfect defense, . . . a complete defense, because this defendant could not have committed a burglary if he was at some other place at the time." The court then charged: "In reference to the alibi the rule is this: In order to make out a complete alibi and complete defense, the evidence on that subject must establish the alibi to the reasonable satisfaction of the jury. However, you will consider the evidence as to the alibi, and if that evidence, along with the other evidence in the case, raises a doubt of guilt of the defendant, you would give the defendant the benefit of the doubt and acquit him." Movant excepts to the charge "for the reason that said charge instructed the jury that the doubt as to the defendant's guilt which would authorize them to acquit the defendant must be a doubt generated by a consideration of all the evidence along with the alibi, whereas, under the law, the doubt authorizing the jury to acquit may be generated by the alibi alone." The charge comports with the rule laid down in *Harrison* v. *State*, 83 *Ga.* 129 (3) (9 S. E. 542), and followed in *Bone* v. *State*, 102 *Ga.* 387 (2), 392 (30 S. E. 845). The two branches of alibi were not confused, and there is no merit in the ground.

■ The gist of special ground 5 is that "the court erred in failing to charge the jury what constituted breaking and entering." There is no merit in the ground.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*