## 32994. REEVES v. THE STATE.

Hall, Justice.

Reeves was tried by a jury, convicted of murder, and sentenced to life imprisonment for the March 1, 1977 murder of George Parrish at the G & C Garage, in Athens, Georgia. Witnesses heard shots from inside the garage, and saw Reeves come out and drive away. Reeves gave a tape recorded statement to police, in which he said the victim damaged a vehicle belonging to him and refused to pay for repairs, and the shooting was done in self-defense when he was arguing with the victim and the victim drew a knife and advanced on him. The tape recorded statement was admitted at trial, following a full Jackson-Denno hearing outside the jury's presence. There was no objection by defense counsel. Following the state's presentation of its trial evidence, Reeves presented no evidence and no testimony.

On appeal, Reeves is represented by different counsel. He brings eight enumerations of error, the first four of which challenge the admissibility of his tape recorded statements to police. No objection was made to this evidence by trial counsel.

1. Objections to evidence, including confessions, may be waived through nonobjection at trial. Wainwright v. Sykes, 433 U. S. 72 (97 SC 2497, 53 LE2d 594) (1977). These four enumerations have been waived by failure to object to the admission of the confession. However, even when considered on their merits, Reeves' claims show no flaw in the state's evidence. Reeves' defense was that he shot the victim in self-defense; he

never denied the shooting. However, he argues here that his statements to officers should have been suppressed because nothing in the record shows that before signing the waiver of his Miranda rights he was advised by officers that the charge against him was murder. This argument must fall.

At the time Reeves was first given the Miranda warnings he was not charged with anything and was not under arrest, but agreed to accompany officers to the Athens Police Department to discuss the death of the victim. Reeves does not even now claim that he did not know that he was being interrogated about his involvement in the victim's death. Moreover, the tape recording shows that Reeves was clearly informed orally that the charge was murder, before any questions were asked except those related to whether he understood his rights. After being told that the charge was murder, Reeves answered questions steadily. The Miranda waiver was not invalidated by this sequence of events. See also *Davis v. State*, 240 Ga. 763 (1978).

Reeves additionally argues that the statements should have been suppressed because at one point in answer to a question he said, "I ain't saying nothing." His claim is that he thus invoked his right to remain silent and officers should have ceased questioning him at that point, and the trial court should on its own motion have ruled the subsequent statements inadmissible.

The statement in question came in the following exchange with Officers Shepherd and Crawford: "Shepherd: We want to know what went on back there. We don't know what went on. Reeves: I have been in trouble all of my life and I ain't never mistreated no one — you won't find one person in the world who will say I have mistreated them, not one person. Crawford: And this boy right here [Shepherd] ain't never mistreated you either. Shepherd: What happened? Reeves: You ain't never done nothing for me either; you ain't never done nothing against me. Don't get me wrong. Crawford: That's right; that's right. Reeves: I don't even know you. Crawford: Because you don't know me; do you? Shepherd: Richard, why don't you just calm down now. Crawford: Just calm down and try to get — Shepherd: What happened back

there in the back when you were back there with George? Reeves: *I ain't saying nothing.* [Emphasis supplied.] Shepherd: Some pepole [sic] heard two shots. Reeves: I don't care what you do, just do what you want to do. You do whatever you want to do. It don't make no difference to me. Crawford; Richard. Richard. Reeves: I could live with it. I could die with it. It don't make no difference to me. Crawford: Listen to me now, don't get upset. Take a coin — a little demonstration now. How many sides does that coin have? Reeves: Two. Crawford: That's exactly right. That is exactly right. Shepherd: Two sides to every story. Crawford: That coin right there has two sides. Reeves: Yeah, ain't nobody care about mine. Crawford: Wait, wait. Shepherd: We want to hear your side of it, George. We've heard. I mean Richard. Reeves: Yes, George's maybe. Crawford: No sir, no. Listen now. There's nobody, there's nobody abused you here in any way, you know, I don't think you have been mistreated here; do you? Reeves: No sir I haven't. Crawford: Huh? Reeves: No sir. Crawford: If you haven't been treated like a person I don't know any other way I could treat you; do you, now really? Reeves: No sir. You have been real nice to me. Crawford: We've heard their side of it, and now we would like to hear your side of it. Do you know what the city pays us for — to investigate. Reeves: Yes sir. Crawford: And as I have told you that coin right there has two sides. Now, I pretty well have got one side, but now you have a side, and you have a right to have a side. I want to know your side, and I feel like you have a side; do you understand me now? Reeves: Yes sir, but ain't nobody ever been interested — Crawford: Well, wait a minute now — Reeves: In my side of nothing. Crawford: All right now. Richard don't get upset now because I haven't used anything or abused you or said anything to you out of the way to offend you in any way. Reeves: No sir you haven't. You have been real nice. Crawford: That's right; that's right, and listen, we are going to treat you that way. Reeves: You've been real nice to me. I can take it a lot better. Crawford: But listen now, I always try to treat a man like I want to be treated. Do you feel that way? Reeves: Yes I do. I try to treat people. Crawford: I am going to treat you like I want you to treat me. Shepherd: Richard, have you and George been having

trouble? Reeves: Yes sir we have. But everybody don't know over what. Shepherd: What kind of trouble have you all been having? Reeves: He stole my motorcycle and wrecked it and he wouldn't pay me for it. And I went down there four or five times trying to get him to pay me for it, but he wouldn't do it. I went down there today, and he told me that he wanted to get this settled once and all before somebody got hurt. And he drawed a knife on me, and I shot him. I know the tape recorder is on, and that's what I done. I don't give a shit. I went over there two or three times."

Viewed in this context, the statement "I ain't saying nothing" is plainly not an attempt to cut off questioning, which under Miranda v. Arizona, 384 U. S. 436, 472 (1966), must be respected as an exercise of the privilege against self-incrimination. In finding this statement voluntary and admissible, the trial court's decision was supported by the preponderance of the evidence. *Goodwin v. State,* 236 Ga. 339, 342 (223 SE2d 703) (1976).

2. Prior to the state's resting its case, the trial court outside the jury's presence advised appellant of his choice to testify or remain silent, and the consequences of each course of action. These words were included: ". . . Irrespective of whether you elect to call any other witnesses or not you will have your choice to testify under oath like any other witness in this case, in which event if you elect to testify you will be subject to cross examination by the district attorney as to anything relevant to this case and *you will be subject to prosecution for perjury in another separate proceeding if you should knowingly and intentionally give false testimony.* [Emphasis supplied.] On the other hand you have the right if you choose to remain silent, say nothing, and the district attorney in his arguments cannot make any comment on your right to remain silent nor can the jury infer any guilt from your exercise of that right. Do you have any questions about the choices that will be available to you personally when you get to that point?"

According to appellant, "the underscored portion of the above remarks to movant meant that the Court believed that if he took the stand as a witness in his own behalf and testified to anything contrary to what the

witnesses for the State testified he would be subject to prosecution for perjury; and the warning had an intimidating effect on movant and it was because of which he did not take the stand as a witness in his own behalf and was thus denied due process of law by the Court."

The court's advice was accurate and was not reasonably subject to the devious construction appellant seeks to give it. This enumeration is without merit.

3. Reeves next contends that the court's charge on flight was not justified by the evidence, and constituted an impermissible comment by the trial court upon the evidence, namely, that he believed flight had been proved. This argument has no merit. The charge on flight made plain that the jury should decide whether they thought flight had been proved, and it was similar to the charge approved in *Kalb v. State,* 195 Ga. 544, 550 (25 SE2d 24) (1943). The evidence of Reeves' leaving the garage and hiding the gun in the woods justified the charge, allowing the jury to consider whether flight had occurred.

4. Reeves next attacks the charge given on the presumption of innocence, which reads as follows: "Now, the defendant enters upon his trial with the presumption of innocence in his favor as to each of the crimes I have charged or I have referred to, and that presumption remains with him throughout the trial unless and until it is overcome by evidence submitted to you establishing his guilt of the crime in question beyond a reasonable doubt."

Reeves argues that because he did not take the stand, the "jury could infer his failure to take the stand and testify overcame any presumption of innocence and [could] return a verdict of guilty without even considering the presumption of innocence is in the nature of evidence and should be so considered by the jury." Therefore, he argues, the trial court erred in not additionally charging that the presumption of innocence "is in the nature of evidence," as phrased in *Connell v. State,* 153 Ga. 151 (111 SE 545) (1922).

The charge as given on the presumption of innocence was correct and adequate, and there was no request by defense counsel for a more elaborate charge. Moreover, the *Connell* case merely ruled that it was not error to charge that the presumption is "in the nature of

evidence"; it did not intimate that this phrase was required to be charged. Therefore, the trial court did not err in this respect. See *Clardy v. State,* 87 Ga. App. 633, 639 (75 SE2d 208) (1953); *Solomon v. State,* 44 Ga. App. 755, 758 (162 SE 863) (1931).

5. The last enumeration of error raises no issue which has not been disposed of above.

No reversible error appearing, the conviction of Reeves for murder is affirmed.

*Judgment affirmed. All the Justices concur, except Bowles, J., who dissents from Division 1.*

ARGUED NOVEMBER 22, 1977 — DECIDED FEBRUARY 22, 1978 — REHEARING DENIED MARCH 28, 1978.

*Rupert A. Brown, Hudson & Montgomery, Jim Hudson,* for appellant.

*Harry N. Gordon, District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr.,* for appellee.