## 33385. GRIGGS v. THE STATE.

PER CURIAM.

Appellant Tommy Lee Griggs was convicted of murder and statutory rape. He was sentenced to death for murder and 20 years consecutive for statutory rape, and appeals.

1. The evidence presented by the state showed that this 19-year-old appellant raped a 10-year-old female and then stabbed and choked her to death. Appellant admitted having sex with the victim and recalls standing over the victim with a knife and seeing her lying on the ground. Medical testimony showed that the victim was alive when she was stabbed several times and alive when strangled. The cause of death was strangulation associated with stab wounds. The evidence was sufficient to authorize the conviction.

2. Appellant contends that the trial court erred in granting the state's motion and by its own motion in ordering the appellant to Central State Hospital for a psychiatric examination. We held in *Presnell v. State,* 241 Ga. 49 (1978), that "both statute and common law grant the trial judge inherent authority to satisfy himself [either through special jury trial, personal examination or the opinion of experts] that the accused has sufficient mental capacity to go to trial," citing cases. This enumeration is without merit.

3. Appellant contends that the trial court erred in

allowing testimony by Dr. William C. Conner, a psychiatrist called as a defense witness, and by Dr. Carl Smith, a psychiatrist called by the state in rebuttal, relating to certain admissions made to them in the course of their examination of the defendant.

The defense psychiatrist, Dr. Conner, testified that the appellant had a schizoid personality, that he was not capable of knowing right from wrong, and that at the time the crime was committed he was in a state of psychosis. As a basis for this opinion, defense counsel asked the psychiatrist to relate the history that "Tommy gave to you." In response to this question, the psychiatrist related what the appellant told him concerning the crime on July 10, 1977, as well as other incidents in his life, including the statement that when he was 12 years old he had severely beaten a 7-year-old boy with a rock. On cross examination, the psychiatrist was allowed to repeat statements, perhaps more in detail, made to him by the appellant concerning the crime on July 10, 1977. Appellant contends that this testimony on cross examination violates Code Ann. § 38-418 (5) excluding certain admissions and communications between psychiatrist and patient. This is without merit. In *Fields v. State,* 221 Ga. 307, 309 (144 SE2d 339) (1965), we said, "By calling the doctor as his witness and allowing him to testify as to the mental condition of the accused the defense waived the right to object to relevant cross examination of the doctor on the ground that such matter was a privileged communication between patient and psychiatrist." Any admissions or damaging statements given to the psychiatrist by the appellant were introduced on direct examination and brought out for the purpose of bolstering the psychiatrist's opinion that the appellant was mentally disturbed. Under these circumstances we find no error.

The state had a right to call Dr. Smith in rebuttal. He related his extensive examination of the appellant based on his history and observation and testified that in his opinion that the appellant knew right from wrong and was "court-competent." He was also allowed, over objection, to relate statements made to him by the appellant in connection with the crime. We find no error

in view of the fact that this evidence was before the jury by way of the direct and cross examination of the appellant's own psychiatrist.

4. Appellant contends that the trial court erred in refusing to declare a mistrial based on an unresponsive answer to a question by Dr. Smith on cross examination in which he intimated that the appellant was involved in "the burning of the cell, and the arson charge." Upon objection by counsel the trial court immediately took corrective action and denied the motion for mistrial. Based on the trial court's prompt and forceful action, we find no error. *Lynch v. State,* 234 Ga. 446, 448 (216 SE2d 307) (1975).

5. Appellant contends that his statement and admissions made to the sheriff and a GBI agent were not freely and voluntarily made since they were based on threats and promises or hope of reward. The trial court conducted a Jackson-Denno hearing at which the defendant and the officers testified. An examination of the transcript clearly shows that the state carried its burden of proving by a preponderance of the evidence that the statements were freely and voluntarily made. *Hurt v. State,* 239 Ga. 665, 668, 670 (2) (238 SE2d 542) (1977). Such a determination must be accepted by this court unless shown to be "clearly erroneous." *Johnson v. State,* 235 Ga. 486 (6) (220 SE2d 448) (1975).

6. It is our conclusion that on voir dire a juror was excused for cause in violation of the principle stated in Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968). In reply to the question put to jurors as to conscientious opposition to capital punishment, the juror responded, "I am on certain kinds of evidence." In further response to the inquiry if he would automatically vote against imposing the death penalty without regard to the evidence developed on the trial, he stated: "If it is direct and not circumstantial, I really don't know exactly what you mean, but if the evidence is all circumstantial, and they don't have any direct witnesses or evidence that saw it committed." The juror was then excused. This uncertainty or equivocation based on the quality of the evidence presented does not meet the test established in Witherspoon, supra (p. 522, n. 21), that a juror must be

"irrevocably committed, before the trial has begun, to vote against the death penalty regardless of the facts and circumstances that might emerge in the course of the proceedings."

As stated in footnote 9 (p. 516) of the Witherspoon opinion, "Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that this is his position." The answers to questions propounded to this juror reveal that he was not committed to vote against the death penalty under *all circumstances* and hence he should not have been excused for cause. A new trial as to punishment must therefore be ordered. See Davis v. Georgia, 429 U. S. 122 (97 SC 399) (1976).

This result is reached solely on the basis of the holding of the Supreme Court of the United States in Davis v. Georgia, supra, reversing this court in *Davis v. State,* 236 Ga. 804, 809 (225 SE2d 241) (1976), in which it was said that even if *one* venireman is improperly excluded "any subsequently imposed death penalty cannot stand."

7. The appellant contends that the trial court erred in not charging the jury, in the absence of a request, on the law and existence of mitigating circumstances during the sentencing phase of the appellant's trial. Since this trial was held this court has decided the cases of *Fleming v. State,* 240 Ga. 142, 146, 147 (240 SE2d 37) (1977) and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977) dealing with the charge of the court required under Code Ann. § 27-2534.1 (b). We need not examine the charge given here in the light of this contention since the court will be required to charge a new jury on the punishment phase of the trial which has been ordered.

The convictions of the appellant for murder and statutory rape are affirmed. The sentence of death is set aside for the reason set forth in Division 6 and a new trial ordered on the issue of punishment for the offense of murder.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hall, J., who concurs in Divisions 1, 4, 5 and 6 and the judgment, and Undercofler,*

*P. J., Bowles and Marshall, JJ., who dissent as to Division 6 and the judgment.*

ARGUED MARCH 14, 1978 — DECIDED APRIL 25, 1978 — REHEARING DENIED MAY 16, 1978.

*Gary E. Watts,* for appellant.

*Johnnie L. Caldwell, Jr., District Attorney, Paschal A. English, Jr., Assistant District Attorney, Arthur K. Bolton, Attorney General, G. Stephen Parker, Assistant Attorney General,* for appellee.

UNDERCOFLER, Presiding Justice, dissenting.

I dissent from Division 6 and would affirm the death sentence. In my opinion the majority misinterprets the United States Supreme Court's decision in Witherspoon v. Illinois, supra. The majority has failed to distinguish, unlike Witherspoon, between jurors who merely have conscientious objections to the death penalty and jurors who can not be impartial because of such objections. Witherspoon was concerned only with jurors who were excluded solely because of their conscientious scruples against inflicting the death penalty. None of the jurors excluded declared it would affect their impartiality. None of them stated he would not impose the penalty in an appropriate case. As stated in footnote 7 (p. 514), "It is entirely possible, of course, that even a juror who believes that capital punishment should never be inflicted and who is irrevocably committed to its abolition could nonetheless subordinate his personal views to what he perceived to be his duty to abide by his oath as a juror and to obey the law of the State." Thus jurors may not be excluded, " . . . simply because they voice general objections to the death penalty or expressed conscientious or religious scruples against its infliction." But, as I read Witherspoon, they may be excluded for cause if they will refuse to obey the law and will refuse to abide by the oath they swear. That is the case here. The juror stated in essence that he would not impose the death penalty on circumstantial evidence even though the case warranted it. He can not be impartial in such case, can not obey the

law, and can not abide by the oath he must swear. Therefore he was properly excluded.

Again, as stated in Witherspoon, footnote 21 (p. 522), "The most that can be demanded of a venireman . . . is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings." The juror here has declared that he will not consider all the penalties if the evidence is circumstantial. He has stated also that he is irrevocably committed to vote against the death penalty regardless of the facts that emerge in the proceedings if such facts are circumstantial. In my opinion he is disqualified under both tests.